UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA POWERS *and* JUSTIN SINGH,

Plaintiffs,

– *against* –

DISCOVERY COMMUNICATIONS LLC.,

Defendant.

**ORDER**

25-cv-6398 (ER)

RAMOS, D.J.:

On August 4, 2025, 4,225 plaintiffs jointly brought this action against Discovery Communications LLC ("Discovery"), seeking a declaratory judgment identifying in which arbitration forum, Judicial Arbitration and Mediation Services ("JAMS") or National Arbitration and Mediation ("NAM"), each plaintiff is entitled to arbitrate their underlying Video Privacy Protection Act ("VPPA") claims.[1]  *See* Doc. 1.  At a premotion conference on November 12, 2025, the Court granted Discovery leave to file a motion to dismiss on the following schedule: motion due December 3, 2025; opposition due January 6, 2026; and reply due January 20, 2026. On December 3, 2025, Discovery filed its motion to dismiss.  Doc. 32.  In its motion, Discovery

---

[1] According to the complaint, on January 6, 2023, Plaintiffs individually noticed claims against Discovery pursuant to the VPPA.  Doc. 1. ¶ 15.  Plaintiffs were all users of the Discovery+ online video streaming service, and each sought to individually arbitrate their claims at JAMS, as was required by Discovery+'s then-active visitor agreement.  *Id.* ¶¶ 1–2.  On January 9, 2023, Discovery posted an updated visitor agreement which designated NAM as the arbitration provider and required aggregate arbitration.  *Id.* at ¶ 16.

In *Pilon v. Discovery Communications, LLC*, a court in this District determined that NAMS was the appropriate arbitration forum for Discovery+ users who continued their subscription past February 1, 2023, while JAMS was appropriate for those whose subscription ended before February 1, 2023.  769 F. Supp. 3d 273 (S.D.N.Y. 2025). The two plaintiffs in that case are not parties to the instant action, though Keller Postman represented the plaintiffs in both cases.

After the *Pilon* decision, Plaintiffs in the instant action "invited Discovery to exchange records and determine which Plaintiffs had active Discovery+ subscriptions after February 1, 2023 . . . [but Discovery] declin[ed] to respond meaningfully to Plaintiffs offer."  *Id.* at ¶¶ 5–6.

noted that two of the plaintiffs, Jessica Powers and Justin Singh, passed away:  Powers on July 21, 2025, about two weeks before the complaint was filed, and Singh on October 1, 2025.  Doc. 33 at 19; Doc. 40 ¶ 6.  Plaintiffs' attorneys confirmed the date each plaintiff died.  Doc. 40 at ¶ 6.

On January 6, 2026, rather than oppose Discovery's motion to dismiss, plaintiffs' counsel, the law firm Keller Postman, filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) for all plaintiffs except for Powers and Singh, which the Court entered on January 7, 2026. Docs. 35, 37.  On January 9, 2026,  Keller Postman filed a motion to withdraw as counsel to the two deceased plaintiffs.  Doc. 39.  In a declaration in support of the motion, Keller Postman confirmed that Powers' and Singh's families were not interested in seeking appointment as representatives of the estates, they were not interested in proceeding with the action, and that they agreed to Keller Postman withdrawing from the case.  Doc. 40 ¶¶ 8–9.

On January 16, 2026, Discovery filed an opposition to the motion to withdraw, which argued that (1) withdrawal was inappropriate and (2) the Court should consider using its inherent powers to sanction Keller Postman.  Doc. 42.  On January 23, 2026, Plaintiffs filed a reply motion addressing both issues.  Doc. 43.  On January 26 and 30, Discovery filed sur-replies, and later on January 30, 2026, Plaintiffs filed a letter with the Court in response.  *See* Docs. 44, 46, 47.

First the Court examines arguments concerning withdrawal.  Keller Postman argues that withdrawal is appropriate because the families of Powers and Singh have confirmed that neither plaintiff has an estate representative and neither family desires to continue with the case.  Doc. 41.  In opposition,  Discovery argues that as Powers died prior to the filing of this case, Keller Postman may never have been properly serving as her counsel, and therefore it is "unclear how Keller Postman could withdraw from a role it was never authorized to perform in the first place."

Doc. 42 at 4.  Further, Discovery argues that allowing Keller Postman to withdraw at this stage would leave the case in a "procedural tangle" as the decedents' claims would still be pending.  *Id.* In its reply, Keller Postman argues that Rule 25 procedures should govern the decedents' claims, and that, as counsel for the deceased parties, Keller Postman cannot file the suggestion of death under Rule 25.  Doc. 43.  Discovery's sur-replies and Keller Postman's letter response to the sur-replies further dispute whether Keller Postman, as counsel for the decedents, may file a suggestion of death under Rule 25.  Docs. 44, 46, 47.

Rule 25 governs the procedure for substituting a party when they die.  Fed. R. Civ. P. 25(a)(1).  Rule 25(a)(1) states:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

*Id*.

The suggestion of death triggering the 90-day timeline, "must be a formal, written document that is both served on the appropriate persons and filed with the court." *Fezzani v. Bear, Stearns & Co. Inc.*, No. 99 CIV. 0793 (PAC), 2023 WL 2612454, at *6 (S.D.N.Y. Mar. 23, 2023), *aff'd sub nom. Fezzani v. Dweck*, No. 24-2478, 2025 WL 3061340 (2d Cir. Nov. 3, 2025) (quoting 6 Moore's Federal Practice - Civil § 25.13 (2023)); *see also Stephens v. American Risk Management Inc.*, No. 89 Civ. 2999 (JSM) (AJP), 1995 WL 479438, at *2 (S.D.N.Y. Aug. 14, 1995) ("Rule 25(a)'s 90-day period . . . can only be triggered by formal service of a suggestion of death."). Further, "[a]ctual knowledge of the party's death is not sufficient, nor is mention of the death in court proceedings or pleadings." *Official Committee of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2017 WL 9485707, at *5 (E.D.N.Y. Aug. 3, 2017), *R&R adopted sub nom. Official Committee of Unsecured Creditors of Exeter Holding, Ltd. v. Haltman*, No. 13-CV-

5475 (JS) (AKT), 2017 WL 3981299 (E.D.N.Y. Sept. 11, 2017).

In the instant action, although there is no dispute that Powers and Singh are deceased, no formal suggestion of death has been filed with the Court. Accordingly, the Rule 25(a) 90-day-clock has yet to begin.

Keller Postman argues that, as former counsel for the decedent, it *cannot* file the suggestion of death, meaning Discovery is the only remaining party with that ability. Docs. 43 at 2–4. Discovery contests that such a restriction exists under Second Circuit precedent. Doc. 44.

Courts in this Circuit have come out differently as to whether counsel for the deceased party can file the suggestion of death. *Compare Hybrid Capital Group, LLC v. Padell*, No. 17 CIV. 6343 (KPF), 2018 WL 11291221, at *1–2 (S.D.N.Y. May 2, 2018) ("[C]ourts in this district have refused to recognize purported suggestions of death where notice of death was provided by the decedent's former attorney after the decedent's death.") *and Stephens*, 1995 WL 479438 at *2 ("The suggestion of death filing may be made by any party . . . however, is not effective if made by *counsel* for the party who has died.") (emphasis in original) *with Jones Inlet Marina, Inc. v. Inglima*, 204 F.R.D. 238, 240 (E.D.N.Y. 2001) ("It is permissible for the former attorney of the decedent to file the suggestion of death, even though the attorney-client relationship ceased.") *and O'Rourke v. Drunken Chicken in NY Corp.*, No. 19 CV 3942 (NGG) (LB), 2021 WL 1394176, at n.2 (E.D.N.Y. Feb. 26, 2021) (noting that there has "been some disagreement about whether a decedent's attorney may file a statement noting death," but finding that "in *Unicorn Tales, Inc. v. Banerjee*, the Second Circuit stated that the language 'of Rule 25(a)(1) contains no . . . restriction on who may file the statement'") (citing 138 F.3d 467 (2d Cir. 1998)), *R&R adopted*, No. 19-CV-3942 (NGG) (LB), 2021 WL 973086 (E.D.N.Y. Mar. 16, 2021).

While the Second Circuit has not squarely addressed the issue, in *Unicorn Tales*, the

Second Circuit found that a decedent's spouse, who was not the legal representative of the decedent's estate nor a party to the action, could file a suggestion of death under Rule 25. 138 F.3d 467 (2d Cir. 1998). The Second Circuit stated:

> It is first contended that the statement of the fact of death must be filed by a party or a formal or appointed representative of the estate of the decedent. As [the decedent's spouse] was not a party and not a formal appointed representative, it is argued that she could not trigger the 90 day period of Rule 25. However, the text of Rule 25(a)(1) contains no such restriction on who may file the statement.

*Id.* at 469; *see also* 7C Wright & Miller's Federal Practice & Procedure § 1955 (3d ed., 2026) (noting that while other circuits require that a party to the litigation must file the notice of death, the Second Circuit "appears to be the outlier"). This Court understands *Unicorn Tales'* rationale to mean that Rule 25(a) does not limit who can file a suggestion of death, and therefore, it does not prevent a deceased party's former counsel from filing it.

Accordingly, the Court directs Keller Postman to file formal suggestions of death for Powers and Singh by June 10, 2026. Keller Postman's motion to withdraw as counsel is DENIED without prejudice. Keller Postman is granted leave to file a renewed motion to withdraw after it has filed the suggestions of death. Further, Discovery's pending motion to dismiss is placed off-calendar. If the Rule 25(a) process does not result in the dismissal of Powers and Singhs' claims, Discovery may request that the motion be renewed and placed on-calendar.[2]

With respect to sanctions, Discovery argues Keller' Postman's conduct "warrants the

---

[2] Discovery also argues that Keller Postman may not have been authorized to bring the instant action on behalf of Powers in the first place. Doc. 42 at 4. Keller Postman responds that Discovery cannot dispute that Keller Postman represented Powers in her underlying claim, that Keller Postman sought to advance Powers' objectives when it understood it had the authority to do so, and that it took appropriate measures after learning about Powers' death. Doc. 43 at 2–3. Indeed, aside from the fact that Powers died two weeks prior to the complaint being filed, Discovery proffers no facts to dispute that Keller Postman never had authority to represent Powers. Alone, the fact that Powers died approximately two weeks before the complaint was filed is insufficient grounds to deny the motion to withdraw. However, as stated above, the motion is denied without prejudice for other reasons.

Court's consideration of whether to exercise its inherent power to issue sanctions."[3]  Doc. 42 at 4.  Discovery argues that Keller Postman's "years-long mass arbitration campaign . . . was not intended to prosecute meritorious claims, but rather to . . . attempt to extract a settlement principally benefitting Keller Postman."  *Id.* at 4–5.  Discovery argues that the underlying VPPA claims have been "meritless from day one"; that Keller Postman was on notice of this deficiency as of October 2025; and that Keller Postman required Discovery to fully brief a motion to dismiss despite this knowledge.  *Id.* at 5–9; Doc. 46.  Further, Discovery argues that in its initial motion to withdraw, Keller Postman offered no explanation as to how it complied with ethical obligations by bringing the action on behalf of the then-deceased Powers; that Keller Postman has engaged in "vexatious conduct" in other cases; and that other Courts have sanctioned attorneys for bringing suits on behalf of dead parties.  *Id.*

The Court's ability to use its inherent powers to sanction a party stems from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31 (1962)).  A federal court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers*, 506 U.S. at 45–46).  Ultimately, to impose sanctions under the

---

[3] In requesting sanctions, Discovery failed to comply with Local Civil Rule 7.1(a)(4), which requires that "an opposing party who seeks relief that goes beyond the denial of the motion" file a "notice of motion, or an order to show cause signed by the court, [that] specif[ies] the applicable rules or statutes pursuant to which the motion is brought, and . . . the relief sought by the motion."  Loc.Civ.R. 7.1(a)(4), (a)(1).  Discovery's request for sanctions was first raised in its opposition to Keller Postman's motion to withdraw without notice.  See Doc. 42.  The Court is mindful, however, of Federal Rule of Civil Procedure 1 and the "strong 'preference for resolving disputes on the merits.'"  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve International, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).  As Keller Postman responded to Discovery's sanction request in its reply brief, and further, as Discovery filed a sur-reply detailing its arguments for sanctions, the Court considers the request.  *See* Docs. 43, 46.

Court's inherent authority, "a district court must find that:  (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay."  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). "Even where the standard is met, '[t]he Court has discretion to decide whether to impose sanctions under . . . its inherent authority.'"  *Doe v. 239 Park Avenue South Associates, LLC*, No. 21 Civ. 279 (JPC), 2022 WL 4592713, at *8 (S.D.N.Y. Sept. 30, 2022) (quoting *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016), *aff'd*, 683 Fed. App'x 33 (2d Cir. 2017)). The Supreme Court has made clear that because of the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion."  *Chambers*, 501 U.S. at 44.

Discovery contends that Plaintiffs underlying VPPA claims are meritless under the Second Circuit precedents *Solomon v. Flipps Media, Inc*., 136 F.4th 41 (2d Cir. 2025), and *Hughes v. National Football League*, No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025). However, the issue before the Court is not the merits of Plaintiffs' VPPA claims, but rather with which arbitration forum, JAMS or NAMS, Plaintiffs must adjudicate those claims.  *See* Doc. 1. ¶¶ 37–42.  Where a contract requires arbitration under the Federal Arbitration Act ("FAA"), federal courts generally may not examine the merits of the underlying claims.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 68 (2019) ("We have held that a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous.  A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.") (internal quotations and citations omitted).  Discovery cites no caselaw indicating that, in the context of a declaratory judgment or sanctions, this

principle is different.  Neither party contests that Plaintiffs underlying VPPA claims must be arbitrated pursuant to the user agreements and the FAA.  Accordingly, the Court declines to examine, or premise sanctions, upon the merits of Plaintiffs' underlying VPPA claims.[4]

Further, Discovery claims that Keller Postman failed its ethical responsibility to communicate with its clients, as evidenced by the fact that plaintiff Powers died prior to the filing the complaint.[5]  Doc. 42.  It is true that, Keller Postman has a responsibility to communicate with each of its clients throughout its representation.  *See e.g.*, N.Y. Rules of Prof'l Conduct R. 1.4(a)(2) (requiring that a lawyer "reasonably consult with the client about the means by which the client's objectives are to be accomplished.").  However, the fact that plaintiff Powers was included in this lawsuit, despite the fact that she died two weeks prior to the filing of the complaint, is not sufficient alone to demonstrate that Keller Postman violated their ethical obligations.

As Keller Postman argues, Discovery does not produce evidence to demonstrate that

---

[4] As the merits of this case pertain to the issue of the forum of arbitration, Discovery's arguments that Keller Postman failed to timely withdraw the case based on the underlying merits of the VPPA claim are insufficient basis for this Court to issue sanctions.

[5] Discovery also argues that Keller Postman did not communicate with any of its clients before bringing this action, because if it had, Keller Postman could have ascertained where each plaintiff was required to arbitrate by asking them about their Discovery+ memberships.  Doc. 46 at 2.  Though Keller Postman has not substantively responded to these allegations (both because, in the context of sanctions, the argument appeared in Discovery's sur-reply and because Keller Postman withdrew the case prior to filing an opposition to Discovery's motion to dismiss), in a letter prior to the Court's November 2025 premotion conference, Keller Postman stated:

> After refusing to produce [account information] evidence to Plaintiffs voluntarily, Discovery now seeks dismissal because Plaintiffs who lack access to Discovery's searchable account history records, could estimate in the first instance when their discovery+ subscriptions ended.  That is a red herring because it would do nothing to allay the impending loss of JAMS filing fees that is the basis for Plaintiffs' suit.  Discovery has never indicated (and in its letter studiously avoids indicating) that it would agree to JAMS arbitration were Plaintiffs to provide such estimates.  In fact, Discovery has always insisted on NAM arbitration.  Given its professed strategy of funneling all claims to NAM, it would surely do so when faced with Plaintiffs' JAMS demands.

Doc. 26 (internal citations omitted).  Though Discovery disputes these contentions, at this juncture the Court finds this insufficient to warrant use of its inherent power to sanction Keller Postman on this basis.

Keller Postman failed to enter into a valid attorney-client relationship with Powers prior to her death or that Keller Postman neglected to regularly communicate with its clients. Doc. 43 at 2–3. Further, Keller Postman asserts that it sought to pursue Powers' interests while she was alive, and upon learning that she was dead, it attempted to withdraw from her representation. *Id.* at 3.

While Discovery identifies some federal courts which sanctioned parties for bringing suits on behalf of deceased plaintiffs or otherwise without their plaintiffs' consent, the Court finds the facts of those cases distinguishable. *See In re Engle Cases*, 283 F. Supp. 3d 1174, 1215, 1217 (M.D. Fla. 2017) (finding counsel acted in bad faith where counsel had not contacted some plaintiffs in over a decade, where counsel affirmed to the Court that the plaintiffs were alive, and where 588 of the plaintiffs had died prior to filing the action.); *Cimeo v. E. Whiteland-Tredyffrin Joint Transportation Authority*, 151 F.R.D. 55, 56 (E.D. Pa. 1993) (imposing sanctions where counsel had brought a case on behalf of a client who never authorized filing of the suit and did "everything she could to prevent its authorization"). Accordingly, the Court denies Discovery's request for sanctions.

For the reasons stated above, Keller Postman's motion to withdraw as counsel is DENIED without prejudice. Keller Postman is directed to file formal suggestions of death for Powers and Singh by June 10, 2026, at which point they are granted leave to file a renewed motion to withdraw. Further, Discovery's pending motion to dismiss is placed off-calendar. If the Rule 25(a) process does not result in the dismissal of Powers and Singhs' claims, Discovery may request that the motion be renewed and placed on-calendar.

Accordingly, the Clerk of Court is respectfully directed to terminate the motions, Docs. 32, 39.

It is SO ORDERED.

Dated:    June 3, 2026
          New York, New York

EDGARDO RAMOS, U.S.D.J.